IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MR. AND MRS. FRANK BUCKLEY, Individually and as Next Friend of Marquita Buckley, a Minor Child, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. 3:04-CV-1321-P |
| GARLAND INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Now before the Court are (1) Defendant's First Amended Motion to Dismiss, filed April 18, 2005; (2) Defendant's Motion for Summary Judgment, filed May 24, 2005; (3) Plaintiffs' Motion to Strike, filed June 28, 2005; and (4) Plaintiffs' Motion for Leave to Supplement Response to Motion for Summary Judgment, filed July 5, 2005. After considering the Parties' arguments, briefing, and the applicable law, the Court hereby DENIES as MOOT Defendant's Motion to Dismiss, DENIES Plaintiffs' Motion to Strike; GRANTS Plaintiffs' Motion for Leave to Supplement Response to Motion for Summary Judgment; and GRANTS Defendant's Motion for Summary Judgment.

**<u>FACTS</u>**

Defendant Garland Independent School District ("Defendant" or "GISD") is a public school district receiving federal funds. Plaintiff Frank Buckley ("Mr. Buckley") is an African-American who coached athletics at GISD beginning in August 2001 until GISD terminated his coaching duties. Mr. Buckley responded by filing a charge of race discrimination against GISD for unlawfully

removing him from his duties as a coach. On December 4, 2002, the Parties settled the discrimination claim through mediation with the Equal Employment Opportunities Commission ("EEOC"), thereby ending Mr. Buckley's employment with GISD. The settlement agreement between the Parties dictated Mr. Buckley as "eligible for rehire" with respect to future employment with GISD.

Plaintiff Marquita Buckley ("Marquita") is an African-American minor child and the daughter of Mr. Buckley and Plaintiff Michelle Buckley ("Mrs. Buckley"). During the 2003-04 school year, Marquita attended North Garland High School ("the School"), a GISD school, where she participated in volleyball. On or about October 16, 2003, Marquita was suspended from the volleyball team for allegedly violating team rules.

That same day, GISD issued a "Criminal Trespass Violator Form" against Mr. Buckley for his alleged confrontational, aggressive, and disruptive behavior toward school staff. This trespass warning prohibited him from entering GISD property.

On October 22, 2003, the Buckleys voluntarily withdrew Marquita from the School.

Plaintiffs Mr. Buckley, Mrs. Buckley and Marquita (collectively, "Plaintiffs") sued Defendant, alleging that Defendant discriminated against Marquita on the basis of race by unlawfully suspending her from school athletics. Plaintiffs further allege that Defendant constructively expelled Marquita from the School by wrongfully refusing Mr. Buckley access to the School. Plaintiffs also assert that GISD retaliated against Mr. Buckley for his previous EEOC filing by preventing Mr. Buckley's access to the School, thereby precluding him from exercising his rights and duties as a parent in regard to the education of his daughter.

Defendant denies all allegations of discrimination and retaliation and counters that GISD

issued the criminal trespass warning against Mr. Buckley as a result of safety and educational concerns.

**DISCUSSION**

First, the Court admonishes Plaintiffs for failing to cite *any* legal authority in support of their claims in this case. Plaintiffs have filed a ten-page summary judgment response that is void of even a single case cite, statute, or legal principle. A legal brief should contain legal arguments, analysis, and authority - not a single one of which has been presented here.

Plaintiffs' brief does contain a motion to strike Defendant's summary judgment evidence, in which Plaintiffs object to Defendant's affidavits, which allegedly contain information that was responsive to, but not provided in or supplemented by, Defendant's interrogatory responses and thus, cannot be subject to cross-examination. Plaintiffs fail to identify the precise statements to which they object and fail to demonstrate precisely how Defendant violated the rules of discovery by failing to supplement their interrogatories. While it may be true that Plaintiffs did not have an opportunity to cross-examine Defendants' witnesses with regard to this testimony, Plaintiffs did have an opportunity to file their own affidavits refuting most, if not all, of the statements contained therein. Therefore, Plaintiffs' motion to strike is hereby DENIED.

**I.    SECTION 1983 CLAIMS.**

    **A.    Denial of Access to Public Schools.**

        **1.    Frank Buckley.**

In their Complaint, Frank and Michelle Buckley allege claims of denial of access to public schools. Specifically, they contend they were denied their constitutional right to parental access to Marquita's public school by issuance of the trespass warning to Frank Buckley. (Compl. ¶ 16.)

3

In order to maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must first show that he has been deprived of a federally protected right by a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). The only arguable constitutional right implicated by Plaintiffs' parental access claim is the right to direct the education and upbringing of their children as guaranteed by the due process clause of the Fourteenth Amendment. *See Pierce v. Society of Sisters,* 268 U.S. 510, 534 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). However, no court has ever interpreted the due process clause to create a parental right of unfettered access to school facilities. *See Rodgers v. Duncanville I.S.D.*, No. 3:04-CV-0365-D, 2005 WL 770712, at *2 (N.D. Tex. 2005) (Kaplan, J.), *report and recommendation adopted,* 2005 WL 991287 (N.D. Tex. 2005) (Fitzwater, J.). To the contrary, courts have consistently upheld the authority of school officials to control activities on school property. *See id.* This includes barring third parties, including parents, from access to the premises when necessary to maintain order and prevent disruptions to the educational environment. *See id.; Lovern v. Edwards,* 190 F.3d 648, 655-56 (4th Cir.1999) (rejecting claim that school administrators must provide parents with "boundless access" to school property); *Van Deelen v. Shawnee Mission Unified Sch. Dist. # 512,* 316 F. Supp. 2d 1052, 1057 (D. Kan. 2004) (finding no constitutional right of parent to enter school); *Ryans v. Gresham,* 6 F. Supp. 2d 595, 601 (E.D. Tex.1998) (same).

Defendant provides evidence of several complaints and incidences that caused the School to restrict Mr. Buckley's access to the School; specifically, (1) Mr. Buckley's unauthorized videotaping of student volleyball practices (August 2003) (Def.'s App. at 68); (2) Mr. Buckley's complaints to Coach Gail Martin during her instructional time with students (Def.'s App. at 107-08); (3) September 9, 2003 confrontation between Mr. Buckley and Coach Suzanne Catchings regarding

4

Mr. Buckley's disqualification as a referee of volleyball games involving North Garland High School due to the conflict of interest created by his daughter being a student at the School and a member of the School volleyball team; and (4) Mr. Buckley's September 9, 2003 reckless or threatening driving that frightened Coaches Catchings and Jill Reynolds following the confrontation about disqualification.

On September 10, 2003, at the request of Coach Catchings, the School District Athletic Office authorized Officer Kevin Murphy to issue a verbal warning to Mr. Buckley that if Mr. Buckley wants to talk to coaches or teachers, he must first schedule an appointment through the main office. (Def.'s App. at 69, 111.)

Subsequent to the verbal warning being issued against Mr. Buckley, the School notified Coach Reynolds that Mr. Buckley was on School campus in violation of the warning. (Def.'s App. at 117.) In early October 2003, Plaintiffs met with School representatives concerning Marquita's allegations of racism against her coaches. (Def.'s App. at 45, 48.) At this meeting, Athletic Director Homer Johnson ("Johnson") instructed Mr. Buckley to communicate only with Johnson or his assistant if he had issues about coaching that he'd like to discuss. (Def.'s App. at 48.) Johnson told Mr. Buckley he was not allowed to speak directly to the coaches. (Def.'s App. at 48.) After the meeting, Mr. Buckley was discovered engaging in the unauthorized videotaping of a volleyball game. (October 2003) (Def.'s App. at 61.) On October 13, 2003, an e-mail was sent from Mrs. Buckley's e-mail address to Coach Catchings criticizing her coaching strategy and results (Pl.'s App.)[1] and on October 15, 2003, an e-mail was sent from Mrs. Buckley's e-mail address to Coach

---

[1] Plaintiffs' Appendix does not comply with Local Rule 56.6, thereby making it very difficult for the Court to locate evidence in the record. The Court urges counsel to consult and comply with the Local Rules of this Court before filing any future documents.

5

Reynolds criticizing Coach Catching's coaching strategy and results.

In light of these collective complaints and incidences following the September 10, 2003 warning, Assistant Principal Steve Minninger ("Minninger") made the decision to issue a written criminal trespass warning against Mr. Buckley. (Def.'s App. at 110.) Both Officer Kevin Murphy and Minninger went to Mr. Buckley's residence to issue the warning in person and to notify Mr. Buckley that he would not be allowed onto school campus unless conducting school business at the main campus administrative office. (Def.'s App. at 112.)

There is no evidence that Minninger had any reason to believe the complaints he relied on were not legitimate complaints or that Minninger acted unreasonably in relying on the reporting of his staff. Nor is there any evidence that the criminal trespass warning issued against Mr. Buckley restricted his ability to oversee his child's education and have access to the School. He retained the ability to conduct official school business at the main office and the ability to talk to his daughter's teachers with an appointment. Because Mr. Buckley retained this right, the Court finds that Plaintiffs have failed to establish that Mr. Buckley's constitutional right was violated and therefore, Defendant's motion for summary judgment is hereby GRANTED with the respect to the denial of access to public school claim asserted by Mr. Buckley.

### 2. Michelle Buckley.

With respect to the same claim asserted by Mrs. Buckley, Plaintiffs argue that Mrs. Buckley was wrongfully denied access to her daughter's school due to the criminal trespass warning issued

---

Likewise, Defendant's use of a motion containing some argument and a separate brief containing some argument is confusing and time-consuming for the Court to use. For future reference, a motion should contain a concise statement that identifies the elements of the claims and briefly states the factual and legal bases on which the party relies. By contrast, a brief should set forth in detail the facts of the case (with citations to the record) and the legal principles and analysis on which the party relies. (*See* Local Rules 56.3-56.5.) All information relied on by a party should be contained in the brief.

against her husband. (Pls.' Resp. at 5.) She claims that this unlawful warning inconvenienced her because her husband could not tend to their daughter at school and because it caused her to have to move to Georgia with her husband, because he was not permitted to work at the School. Mrs. Buckley has cited no law in support of her argument and has not offered any evidence demonstrating that she was deprived by the School of access to the School. Further, because it has not been shown that the criminal trespass warning issued to Mr. Buckley violated any constitutional right, Mrs. Buckley cannot show her constitutional rights were violated. Because Mrs. Buckley has not established that her constitutional right to school access was violated, Defendant's motion for summary judgment is hereby GRANTED with the respect to Mrs. Buckley.

### B.     Discrimination Claims.

In their Complaint, Plaintiffs assert race-based discrimination claims on behalf of Mr. Buckley and Marquita Buckley. (Compl. ¶ 15.) However, neither the Complaint nor Plaintiffs' response brief specifies any discriminatory conduct allegedly committed by Defendant with regard to Mr. Buckley. (Compl. ¶ 15; Resp. at 8-10.)

Plaintiffs contend in their Complaint that Defendant discriminated against Marquita by constructively expelling her from school because she was African-American. (Compl. ¶ 15.) Plaintiffs contend that Marquita was constructively expelled when the school issued its criminal trespass warning against Mr. Buckley. (Compl. ¶ 10.) By preventing Mr. Buckley from going onto the property of the school, he was effectively unable to oversee the education of his child, thereby causing her constructive expulsion from the school. (Compl. ¶ 10.)

Although it is not specifically pled in Plaintiffs' Complaint, both Parties also brief the issue of whether Plaintiff has sufficiently asserted a race-based discrimination claim based on her removal

7

from the volleyball team. (Br. at 4; Mot. at 5; Resp. at 5-8.)

Plaintiffs further allege that Defendant retaliated against Mr. Buckley and Marquita for filing his EEOC charge. (Compl. ¶ 15.) Their Complaint states that the retaliatory conduct consisted of the issuance of the trespass warning against Mr. Buckley and the constructive expulsion of Marquita. (Compl. ¶ 5.) However, in their briefing, Plaintiffs contend that the retaliatory conduct against Marquita consisted of removing her from the volleyball team. (Resp. at 3.)

A governmental entity such as GISD can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *See Board of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 403 (1997). A governmental entity cannot be liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *See Monell v. Dep't of Soc. Svcs. of City of N.Y.*, 436 U.S. 658, 694 (1978). A plaintiff must identify the purported policy said to constitute a violation of her rights, show that the policy is attributable to the governmental entity itself, and establish that she incurred her injury because of the application of that specific policy. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). She must demonstrate that the governmental entity, through its deliberate conduct, was the moving force behind the injury or harm suffered, and she must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County,* 520 U.S. at 403-04.

There is no evidence that Coach Jill Reynolds - the coach who made the decision to suspend Marquita from the team - was a policymaker for GISD or that GISD had an official policy or custom of discriminating based on race. Also, Plaintiffs have failed to show that Minninger, the Assistant Principal who issued the criminal trespass warning, was a final policymaker with respect to this

8

action. Plaintiffs make allegations that "the racial environment of the GISD athletic program is out of touch with reality" and characterize Johnson's statement that he does not believe anyone in athletics has been discriminated against because of his race as unrealistic. Plaintiffs also contend the fact that Johnson promoted Coach Catchings to assistant athletic director even though she lost every single game the previous year is evidence of his bias toward her.

Yet these facts simply do not assist Plaintiffs in establishing that the GISD had an official policy or custom of discriminating based on race. Plaintiffs' discrimination and retaliation claims fail on this basis alone. Plaintiffs have not identified an official policy of the GISD to discriminate on the basis of race. An unofficial policy or custom can be shown through a pattern of similar incidents by school officials or employees which, "although not authorized by officially adopted and promulgated policy, is so common and so well established as to constitute a custom that fairly represents [School] policy." *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Plaintiffs present no evidence to establish that such a custom or pattern existed within the GISD. Broad, conclusory allegations as insufficient to create a fact issue as to the existence of such a custom or practice. For these reasons, Defendant's motion for summary judgment is hereby GRANTED on Plaintiffs' § 1983 claims against GISD based on race discrimination and retaliation.

## II.   TITLE VII.

### A.   Marquita and Mrs. Buckley.

"[I]t is well-settled that an employee-employer relationship is an absolute prerequisite to claims filed pursuant to Title VII." *Yowman v. Jefferson Co. Community Supervision and Corrections Dep't*, 370 F. Supp. 2d 568, 589 (E.D. Tex. 2005); *Johnson v. Crown Enters., Inc.,* 294 F. Supp. 2d 850, 854 (M.D. La. 2003), aff'd in part, rev'd in part on other grounds*,* 398 F.3d 339

(5th Cir. 2005); *see also Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993). "'The plaintiff's status as an 'employee' and the defendant's status as an 'employer' are jurisdictional requirements for recovery under Title VII.'" *Yowman*, 370 F. Supp. at 589 (quoting *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp.2d 558, 572 (S.D. Tex. 1999)). Because neither Marquita nor Mrs. Buckley was or is an employee of GISD, the Court hereby DISMISSES their Title VII claims.

B.   **Mr. Buckley.**

Plaintiffs allege that Defendant retaliated against Mr. Buckley for filing his EEOC charge. (Compl. ¶ 15.) Defendant responds by arguing that Plaintiffs' retaliation claims fail with respect to Mr. Buckley because (1) a criminal trespass warning does not constitute an adverse employment action and (2) the school had legitimate, non-discriminatory reasons for issuing the warning. (Mot. at 10.)

Mr. Buckley responds by arguing that the warning was an adverse employment action because (1) he was eligible for rehire with the school and intended to apply for rehire and (2) he was unable to referee games at the school while employed with the Dallas Basketball Association. (Buckley Dep. at 47, 60-62; App. at 14.)

Plaintiffs' contention that the criminal trespass warning had the potential to interfere with any future job Mr. Buckley may have applied for with GISD is too speculative to form the basis for an adverse employment action. There is no evidence that Mr. Buckley would have been prohibited from going to the school's main office to apply for a job with the district and there is nothing in the prohibition that prevents him from seeking permission to come to the school to apply for a position or to perform a job. Further, there is no evidence that he tried to obtain permission and was not

10

allowed to do so. Likewise, Plaintiffs' conclusory assertion that Mr. Buckley was unable to referee games is not supported by any actual evidence of games missed because of the trespass warning. Plaintiffs have failed to provide any evidence that the criminal trespass warning actually interfered with Mr. Buckley's job. Further, the School has given legitimate, nondiscriminatory reasons for issuing the trespass warning and for the decision to not allow Mr. Buckley to referee volleyball games involving the School. As noted previously, Minninger had a reasonable basis for considering Mr. Buckley disruptive and a safety threat. Plaintiffs have not shown that the School's actions were a pretext for discrimination. Therefore, Mr. Buckley's Title VII retaliation claim is hereby DISMISSED.

## III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.[2]

Plaintiffs allege that Defendant should be liable for intentionally inflicting emotional distress on Plaintiffs by reason of Defendant's action. (Compl. ¶ 19.) Defendant argues that it is entitled to sovereign immunity with respect to this tort claim. (Mot. to Dismiss Br. at 6.) Because Plaintiffs do not dispute this argument, the Court will assume that Plaintiffs concede that sovereign immunity bars their claim of intentional infliction of emotional distress. For this reason, Defendant's motion for summary judgment on Plaintiffs' claim of intentional infliction of emotional distress is hereby GRANTED.

## IV.   PUBLIC POLICY VIOLATION.

Plaintiffs seek to assert a claim for violation of a statutory provision that codifies federal policy providing for parental access to federally-funded public schools. *See* 20 U.S.C. § 7273. As

---

[2] With respect to this claim, Defendant incorporates the arguments made in its Motion to Dismiss briefing. (Br. at 4.)

11

Defendant points out - and Plaintiffs do not dispute - § 7273 does not create a cause of action or authorize a suit for relief. Therefore, Defendant's motion for summary judgment on Plaintiffs' claim of public policy violation is hereby GRANTED.

IT IS SO ORDERED, this 23rd day of August 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE